```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF MISSISSIPPI
                    JACKSON DIVISION
```

LESLEY REED AND
TERRENCE REED                                       PLAINTIFFS

VS.                              CIVIL ACTION NO. 3:06CV365LS

NATIONWIDE MUTUAL FIRE INSURANCE
COMPANY, GEORGE MCADORY AND
STEPHEN F. SONGE                                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiffs Lesley Reed and Terrence Reed to remand pursuant to 28 U.S.C. § 1447. Defendant Nationwide Mutual Fire Insurance Company (Nationwide) has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion to remand should be denied.

This case involves an insurance dispute relating to a December 30, 2002 fire loss to plaintiffs' home. At the time of the fire, the home was insured under a policy issued by Nationwide. Plaintiffs promptly notified Nationwide of their loss and submitted a claim for benefits. Following an investigation, Nationwide concluded that the fire was incendiary and that Lesley Reed had opportunity and motive to set the fire. It therefore denied payment to Lesley Reed, and filed a declaratory judgment

action in the County Court of Hinds County, Mississippi seeking a declaration that the Reeds' coverage was void. Thereafter, on May 30, 2006, the Reeds filed the present action in the Circuit Court of Hinds County against Nationwide for bad faith denial of their claim. Plaintiffs also named as defendants George McAdory, the Nationwide claims adjuster assigned to the Reeds' fire loss claim, and Stephen Songe, Nationwide's property claims manager for Mississippi, alleging that they failed to adequately investigate the fire loss and failed to properly evaluate the claim.

Nationwide removed the case on the basis of diversity jurisdiction, asserting that the amount in controversy exceeds $75,000, and that there is complete diversity between the parties, because plaintiffs are Arkansas citizens and hence of diverse citizenship from Nationwide, a nonresident insurer, and McAdory and Songe, Mississippi citizens, and/or because even if plaintiffs are Mississippi citizens, the citizenship of McAdory and Songe must be disregarded in assessing the presence of diversity of citizenship because both these defendants have been fraudulently joined.

There is a dispute between the parties as to the citizenship of the plaintiffs at the time this suit was filed. The complaint recited that plaintiffs were citizens of Mississippi and of Arkansas; yet a party cannot simultaneously be a citizen of two states and thus, at the time the complaint was filed, plaintiffs

were either citizens of Mississippi or they were citizens of Arkansas, but they were not citizens of both Mississippi and Arkansas.  Nationwide takes the position that at least as of the time suit was filed, plaintiffs were citizens of Arkansas because that was the state in which they resided.  Plaintiffs, on the other hand, have maintained that they moved to Arkansas prior to filing suit to live with Lesley Reed's mother only because they had lost their home in Mississippi to foreclosure (as a result of Nationwide's failure to make timely or sufficient payment to their mortgagee), and that they never intended to remain in Arkansas indefinitely but rather intended to return to Mississippi. Terrence Reed states, in fact, that at the time suit was filed, he was already working sporadically in Mississippi and living in both Arkansas and Mississippi, and according to an affidavit recently submitted by Terrence Reed with his reply to Nationwide's response, he has actually moved back to Mississippi and is currently living and working in Canton, Mississippi.  They conclude, therefore, that they are and have at all times remained Mississippi citizens.

Although there is uncertainty surrounding the issue of plaintiffs' citizenship, it is unnecessary to resolve the issue,

because it is apparent that McAdory and Songe were fraudulently or improperly joined.[1]

The question as to Nationwide's charge of fraudulent or improper joinder is whether Nationwide has shown there is no reasonable possibility of recovery against the non-diverse defendants in state court. See Smallwood v. Illinois Cent. R.R., 385 F.3d 568, 573 (5th Cir. 2004) (en banc).[2]  Although plaintiffs' complaint includes a number of claims against "defendants," including McAdory and Songe, grounded on the insurance contract itself and the failure to pay benefits under the contract, i.e., claims for breach of contract, breach of the implied duty of good faith and fair dealing and tortious breach of contract/bad faith, as a matter of law, these claims are not actionable as against McAdory or Songe.  Under Mississippi law, it is well settled that an agent of a disclosed principal is not a party to his principal's contract and cannot be liable for its breach.  See Rogers v. Nationwide Prop. & Cas. Ins. Co., 433 F.

---

[1] If the plaintiffs were citizens of Arkansas when the suit was filed, it would be unnecessary to consider Nationwide's fraudulent joinder argument because complete diversity would exist irrespective of the presence of McAdory and Songe in the action. Conversely, because McAdory and Songe were improperly joined, then there is complete diversity even if plaintiffs are citizens of Mississippi.

[2] "Fraudulent joinder" is also referred to as "improper joinder" by the Fifth Circuit.  See Smallwood v. Illinois Cent. R. Co., 385 F.3d 568, 571 n.1 (5th Cir. 2004).

Supp. 2d 772, 776 (S.D. Miss. 2006); <u>Jabour v. Life Ins. Co. of North America</u>, 362 F. Supp. 2d 736, 740-41 (S.D. Miss. 2005).  <u>See also</u> <u>Jenkins v. Farmington Cas. Co.</u>, 979 F. Supp. 454, 457 (S.D. Miss. 1997) (agent who is not party to insurance contract is not liable for payment of contractual benefits).  "Similarly, it is clear that [an agent], as a non-party to the contract ha[s] no implied duty of good-faith and fair-dealing with regard to the performance of the contract and thus, cannot be liable under a bad-faith theory of recovery."  <u>Jabour</u>, 362 F. Supp. 2d at 736.

Furthermore, under Mississippi law, while "[a]n adjuster has a duty to investigate all relevant information and . . . make a realistic evaluation of a claim," <u>Bass v. California Life Ins. Co.</u>, 581 So. 2d 1087, 1090 (Miss. 1991), insurance adjusters, agents or other similar individuals or entities may not be held independently liable for simple negligence in connection with their work on a claim but rather may only be held liable for conduct which is grossly negligent, malicious or which shows a reckless disregard for the rights of the insured, <u>see</u> <u>Gallagher Bassett Servs., Inc. v. Jeffcoat</u>, 887 So. 2d 777, 785 (Miss. 2004) (citing <u>Bass</u>, 581 So. 2d at 1089).  "In other words, agents for insurance companies can be held liable for conduct that constitutes an independent tort."  <u>Jabour</u>, 362 F. Supp. 2d at 741 (citing <u>Gallagher</u>).

Plaintiffs maintain they have made and substantiated allegations against both McAdory and Songe which satisfy this standard, or which a state court could possibly find sufficient, and that therefore, a finding of fraudulent joinder is not supportable. In the court's opinion, however, it is quite clear that plaintiffs have not identified any act or omission by either resident defendant in the complaint or otherwise that even arguably qualifies as gross negligence, malicious or reckless disregard for plaintiffs' rights.[3]

Plaintiffs contend that McAdory was grossly negligent and/or reckless with respect to his (1) failure to timely and adequately

---

[3] In Smallwood, the Fifth Circuit identified two avenues for predicting whether a plaintiff has a reasonable basis of recovery under state law.
> The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6)-type challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.

Smallwood, 385 F.3d at 573. See also Berry v. Hardwick, 152 Fed. Appx. 371, 374-375, 2005 WL 2652062, 3 (5th Cir. 2005) (explaining that under Smallwood, it is proper first to consider the allegations in the complaint, and if the plaintiff's allegations survive a Rule 12(b)(6)-type challenge, the court may consider evidence outside the pleadings).

adjust their claim and to afford them a timely decision on their claim; (2) failure to adjust and timely pay the mortgagee until almost a year after the loss, and then having made an inadequate payment which was insufficient to permit plaintiffs to avoid foreclosure of their home; (3) failure to comply with a provision in the policy calling for payment within 60 days; and (4) his having falsely accused Lesley Reed of arson.  However, McAdory had no role in the decision whether to pay the claim, and, as Nationwide correctly argues, the duty to timely pay claims and the decision as to the amount or amounts payable under the policy, whether to the insureds or the insureds' mortgagee, ultimately rests with the insurer, not the adjuster.  The adjuster owes no independent duty to the policyholders to comply with the provisions of the insurance policy or to pay the insured's claim.

Plaintiffs' suggestion that McAdory was grossly negligent, malicious or that he acted with reckless disregard for their rights in his investigation of the claim is likewise wholly unsupportable.  One of McAdory's first acts when he was assigned to the claim was to have Jim Smith of Nationwide's Special Investigative Unit (SIA) become involved in the claims investigation, which was the protocol for all fire losses.  Smith, in turn, hired James Vickers, Fire Scene Analyst and Certified Cause and Origin Investigator, and Ray Franco, Forensic Electrical Engineer and Consultant and Fire Origin and Cause Investigator, to

investigate the fire.  It is undisputed that both of these investigators inspected the fire scene; that neither found any evidence of an accidental cause; and both concluded that the fire was intentionally set on the kitchen counter-top by the ignition of the plastics of the coffee maker by the use of ordinary combustibles, believed to be newspaper.

In support of their motion, plaintiffs complain at length about the validity of Vickers' and Franco's conclusions.  They impugn the methods used by these experts to investigate the fire, including what they contend was a failure to comply with accepted protocols for fire investigation and more specifically NFPA 921 ("Guide for Fire and Explosion Investigations"), and discount their conclusions as "specious."  The fact is, however, plaintiffs do not and cannot dispute that, whether or not their methodology was proper or their conclusions ultimately correct, Vickers and Franco were the experts upon which McAdory, Songe and Nationwide relied, and those experts both concluded the fire was intentionally set.

In addition to receiving and transmitting these experts' reports, McAdory and/or Smith conducted pertinent interviews, including interviews of both plaintiffs, and obtained relevant documents and provided all the information gathered to Nationwide. While plaintiffs vigorously dispute Nationwide's conclusion that the fire was intentionally set by Lesley Reed, and insist that the

accusation of arson is utterly without foundation, they have pointed to nothing that McAdory did or failed to do in the conduct of the investigation that would support a conclusion that he was grossly negligent or acted in reckless disregard of their rights.

As for Songe, the record discloses that Songe, along with two other individuals, Bob Stayton, Nationwide's assistant property director for the south central region, and Stayton's assistant, Jeff Gilbert, made the decisions with respect to plaintiffs' claim.  In their complaint, plaintiffs detail various ways in which they contend that Songe's evaluation of the claim was grossly negligent, alleging, in particular, that he failed to read and consider Lesley Reed's Examination Under Oath and instead chose to rely on a summary prepared by Nationwide's counsel which erroneously reported that Lesley Reed was not receiving support from her husband, Terrence, at the time of the fire; that he erroneously and illogically concluded that Lesley Reed had a financial motive to set the fire in light of her pending bankruptcy case when her bankruptcy plan had already been confirmed prior to the time of the fire and when it should have been apparent that her bankruptcy trustee, and not Lesley Reed personally, stood to benefit from any insurance payments; that he was unaware that a clear and convincing evidence standard applied in Mississippi to claims of arson; that despite being the property claims manager for the State of Mississippi, he was unaware of

9

NFPA 921; and that he made the decision to deny plaintiffs' claim without the benefit of (and without knowledge even of the existence of) a February 17, 2003 report from the Jackson Fire Department which listed the cause of the fire as "undetermined."

At most, some of these allegations (but certainly not all) are arguably suggestive of simple negligence, but none qualifies as gross negligence, malice or recklessness.  Songe was not negligent, much less grossly negligent, in relying on the retained investigators' conclusions as to the cause of the fire, and certainly was not grossly negligent for not knowing the specific protocols involved in cause and origin investigations.  He was not negligent, and certainly not grossly negligent, in reading Nationwide's counsel's summary of the insureds' Examinations Under Oath rather than the actual transcripts of the Examinations Under Oath, for he would have reasonably assumed that counsel would have included all pertinent information in his summary.  His conclusion that Lesley Reed's bankruptcy contributed to her financial motive for setting the fire, if not entirely accurate, was not without any reasonable basis.  It could not have been gross negligence to not have been aware of a JFD report listing the cause of the fire as "undetermined," and moreover, it is noted that the report in question did not conclude that the fire was <u>not</u> intentionally set and thus it was not inconsistent in any event with Franco's and Vicker's conclusion that the fire was intentionally set.  In

10

short, even if Lesley Reed did not commit arson, none of plaintiffs' allegations would reasonably support a conclusion that Songe was grossly negligent in concluding that she did, based on the information provided him, including, most pertinently, the experts' reports.

Based on the foregoing, the court concludes that both McAdory and Songe have been improperly joined and concludes therefore that plaintiff's motion to remand should be denied.[4]

Accordingly, it is ordered that plaintiffs' motion to remand is denied.

SO ORDERED this 7th day of November, 2006.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

[4] Plaintiffs contend that an additional basis for remand is that Nationwide's removal of the case violated the automatic stay. The court rejects this argument. Regardless of whether the removal violated the stay, there is diversity jurisdiction over this case and there is nothing inequitable about the court's exercising that jurisdiction.