```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF MISSISSIPPI
                    JACKSON DIVISION

LESLEY REED                                         PLAINTIFF


VS.                           CIVIL ACTION NO. 3:06CV365TSL-JCS


NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY, GEORGE MCADORY
AND STEPHEN F. SONGE                               DEFENDANTS
```

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Nationwide Mutual Fire Insurance Company (Nationwide) for summary judgment on the issue of punitive damages. Plaintiff Lesley Reed has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is well taken and should be granted.

This case involves an insurance dispute relating to a December 30, 2002 fire loss to plaintiff's home. At the time of the fire, the home was insured under a policy issued by Nationwide. Plaintiff promptly notified Nationwide of the loss and submitted a claim for benefits. Following an investigation, Nationwide concluded that the fire was incendiary and that Lesley Reed had opportunity and motive to set the fire. It therefore denied payment to her, and filed a declaratory judgment action in the County Court of Hinds County, Mississippi seeking a declaration that the coverage was void. Thereafter, on May 30, 2006, she filed the present action in the Circuit Court of Hinds

County against Nationwide for bad faith denial of her claim. Nationwide seeks summary judgment on plaintiff's claim for punitive damages, contending that as a matter of law, Nationwide had a legitimate or arguable basis for denying Reed's fire loss claim.

"[T]he burden rests upon an insurer claiming civil arson to prove it, and this is so whether it be asserted defensively in an action by the insured on a policy or, . . . in an action by the insurer for declaratory judgment. ... [W]hen an insurer seeks to avoid coverage under a fire insurance policy charging that the insured has been guilty of civil arson, the insurer must prove each element of its claim by clear and convincing evidence." McGory v. Allstate Ins. Co., 527 So. 2d 632, 636 (Miss. 1988). These elements are "(1) an incendiary fire; (2) motive of the insured to destroy the property; (3) evidence that the insured had the opportunity to set the fire or to procure its being set by another." Id. (citations omitted).  The issue presented by the motion under consideration, however, is not whether Lesley Reed committed arson.  Nationwide concedes that is an issue that must be presented to and resolved by a jury in a trial setting.  The issue here is whether plaintiff has sufficient proof of "bad faith" to warrant a jury's considering whether to award punitive or extracontractual damages.

Under Mississippi law, "before punitive damages may be recovered from an insurer, the insured must prove by a preponderance of the evidence that the insurer acted with (1) malice, or (2) gross negligence or reckless disregard for the rights of others." Hans Constr. Co., Inc. v. Phoenix Assurance Co., 995 F.2d 53, 55 (5th Cir. 1993) (quoting Universal Life Ins. Co. v. Veasley, 610 So. 2d 290, 293 (Miss. 1992)). Punitive damages are unavailable if the insurance company had a legitimate or arguable reason for denying a claim. Id. "An insurer is also shielded from extra-contractual damages–e.g. reasonable attorney fees, court costs, and other economic losses–where there was an arguable reason for denying a claim." Id. at 56.

The issue, then, becomes whether Nationwide had a legitimate or arguable basis for its conclusion that Lesley Reed committed arson. Plaintiff maintains that the fire was not incendiary and has an expert who will so attest. She acknowledges, though, that at the time Nationwide denied her claim for policy benefits, the insurer had been advised by two independent cause and origin investigators that the fire at the home was incendiary in origin. Thus, while plaintiff claims that the findings of these two investigators were "completely incorrect," she effectively concedes that "Nationwide may be immunized under applicable law from a finding that it lacked a legitimate or arguable basis (relating to the incendiary prong of its arson defense) based on [its] reliance upon the findings of [these] independent origin and

3

cause investigators." Plaintiff also concedes that Nationwide had a legitimate basis for concluding that she had opportunity to set the fire. The home was locked at the time the fire started, and she was the only person with keys to the home and had left the home around twenty to thirty minutes before the fire was reported. Plaintiff insists, however, that Nationwide had no legitimate or arguable basis for its putative conclusion that she had a financial motive to start the fire; she claims that Nationwide concocted a false financial motive on her part to support its arson defense when the evidence with which Nationwide was presented belied any such motive.

At the time of the fire in December 2002, Lesley Reed was in bankruptcy and had been since October 2002, when she filed a Chapter 13 petition. Prior to filing for bankruptcy protection, both Lesley Reed and her husband Terrance Reed had experienced extended periods of unemployment. Plaintiff was at least three or four months in arrears on the mortgage, and she had fallen behind in her payments to several creditors to the extent that a number of credit card debts and debts to medical providers had been placed for collection. A Chapter 13 plan was entered by the bankruptcy court on October 24 which provided for monthly payments of $818 and beginning with Reed's first paycheck in November, her employer had begun deducting from her paycheck $409 bi-monthly to fund her bankruptcy plan. In her examination under oath taken in January 2003, Lesley Reed testified that her net monthly pay was

$1,364, so that after deductions for payments under her bankruptcy plan, she was left with $550 each month; she reported living expenses of $1000 (not covered by her bankruptcy plan), leaving her with a deficit of approximately $450 each month.  Although Reed also testified in her examination under oath that this $450 shortfall was covered by payments from her husband Terrance, from whom she was separated at the time of the fire, those individuals at Nationwide who made the decision on her claim for benefits never read the transcript of Ms. Reed's examination under oath but instead relied on a summary of Ms. Reed's examination under oath prepared by Nationwide's attorney, who reported to the insurer that Terrance Reed had not made any support payments to Lesley Reed.  Thus, Nationwide was under the impression that Lesley Reed's monthly expenditures exceeded her monthly income (from all sources) by $450 each month.  From this, they concluded that she was in financial straits and consequently had a financial motive to burn the house.

   Plaintiff takes the position that Nationwide's determination in this regard was grossly negligent and made in reckless disregard of her rights because (1) Nationwide failed to read the actual transcript of Lesley Reed's examination under oath and chose instead to rely on a mere summary by the company's attorney, and (2) Nationwide failed to consider that any payment under the policy on a fire loss to the home would not have gone to Lesley

5

Reed but rather would have gone to her bankruptcy trustee and that therefore, she did not stand to benefit from burning the house.

In response to defendant's motion, plaintiff argues that "[i]t is for a jury to decide whether Nationwide, in the context of a competent investigation, should have reviewed the EUO, and whether it was more than simple negligence to reach a conclusion that was wholly contrary to the testimony give by its insured. . . ." Although certainly Nationwide could have handled the claim differently, the court concludes as a matter of law that Nationwide's actions did not rise to the level of gross negligence or recklessness as is required to support an award of punitive damages. Simply put, no reasonable jury could find that Nationwide was grossly negligent or reckless in relying on the summary of Ms. Reed's testimony in her examination under oath provided by the company's counsel. The company cannot be found liable for punitive damages solely because its attorney misstated her testimony.

Plaintiff contends alternatively that even if Nationwide could reasonably (albeit mistakenly) have concluded that she was under financial stress because her monthly income was insufficient to cover her monthly expenses, the company should have known that because she was in bankruptcy, any payment for loss to the house would have gone to the bankruptcy trustee, and thus it should have recognized that the fact she was in bankruptcy belied any reasonable conclusion that she had a financial motive

6

to burn the house.  By this argument, plaintiff seems to suggest that payment of policy benefits to the bankruptcy trustee would not have benefitted her, but that is certainly not the case. Reed's monthly mortgage payments of $560 were paid under the plan, along with an additional $140 per month (for a limited period of the plan) payable to Union Planters, the mortgagee, to make up the arrears.  By far, then, the greater portion of her monthly payments to the bankruptcy plan were for the mortgage.  The balance of her monthly payments under the plan were for her car payment, in the amount of $121 monthly, and ten percent of her unsecured debt ($12,796) payable over the life of the plan.  Had policy proceeds been paid by Nationwide, whether directly to Ms. Reed and Union Planters or to the bankruptcy trustee, the debt to Union Planters would have been eliminated and Ms. Reed's plan payment would have been reduced to the extent of the mortgage payments and arrears.  Based on the foregoing, a jury could not reasonably find that Nationwide lacked a legitimate or arguable basis for denial of benefits.

That is not to say, of course, that the evidence demonstrates that Ms. Reed committed arson.  Whether Nationwide is able to sustain its burden to prove arson is an issue that a jury will decide.  This court holds only that the undisputed facts of record do not support the imposition of punitive or extracontractual damages for Nationwide's denial of the claim.

As an additional basis for seeking punitive damages, plaintiff argues that Nationwide's unexplained delay in handling the mortgagee claim, and its insufficient payment to the mortgagee, resulted in the bank's foreclosure on the home and plaintiff's consequent permanent loss of the property.  Under Mississippi law, an insurer of mortgaged property destroyed by fire has an independent contractual obligation to pay the mortgagee the amount due under the note and deed of trust, and this obligation is not diminished by any wrongdoing by mortgagors.  See Miss. Code Ann. § 83-13-9 (mandating that each fire insurance policy taken out by a mortgagor must include a union or standard mortgagee clause); see Hartford Fire Ins. Co. v. Associates Capital Corp., 313 So. 2d 404, 407 (Miss. 1975) 407 ("[W]here the 'union' or 'standard mortgage clause' is included in an insurance policy, the mortgagee is entitled to the proceeds of the policy, and the mortgagee's right to recover will not be invalidated by the act or negligence of the mortgagor of the insured's property.").  Such mortgagee insurance is in effect an independent contract between the insurer and mortgagee.  Talman Federal Sav. & Loan Ass'n v. American States Ins. Co., 468 So. 2d 868, 874 (Miss. 1985).  Upon payment to the mortgagee, the insurer becomes subrogated to the rights of the mortgagee and obtains an assignment of the note and deed of trust.

Here, it is undisputed that as early as February 2003, Union Planters provided Nationwide with a payoff figure of $48,915 on

8

Reed's mortgage.  Nationwide's policy provided coverage for the dwelling in the amount of $51,400, an amount more than sufficient to pay off the mortgage.  However, Nationwide made no payment to Union Planters until December 2003, and its payment was not for the full amount of the mortgage, which would have been payable in the event of a total loss, but rather was for approximately $23,000, the amount Nationwide's adjuster had determined was the reasonable cost to repair the damage sustained to the home.  This payment was made pursuant to a claim by Union Planters in November 2003, which had in October 2003 gotten the bankruptcy stay lifted so that it could initiate foreclosure proceedings.[1]  The property was ultimately sold at foreclosure in early 2004.

Plaintiff takes the position that Nationwide's unexplained and reckless failure to pay the mortgage debt for almost a year, and its tender of an insufficient amount (i.e, an amount less that the full amount of the mortgage debt) permanently deprived her of her home and real property.  She contends that foreclosure would have been avoided had Nationwide timely paid the full amount of the mortgage, and that a jury should be permitted to decide whether its failure in this regard warrants the imposition of punitive damages.

---

[1] The court notes that in July 2003, after Nationwide had denied plaintiff's claim for benefits and instituted a declaratory judgment action, Lesley Reed's bankruptcy was converted from Chapter 13 to Chapter 7.  In August 2003, Union Planters moved to lift the automatic stay so that it could initiate foreclosure proceedings and in October 2003, an agreed order was entered lifting the automatic stay.

9

For its part, Nationwide points out that the effect of the mortgage clause statute is to make a new and independent contract between the insurance company and the mortgagee in which Reed had no interest. Union Planters could have sued Nationwide for breach of contract had Nationwide failed or refused to pay, and to pay the proper amount. But Nationwide contends that the mortgagor, Reed, has no standing to sue Nationwide based on a breach of the contract between Nationwide and Union Planters. In fact, numerous cases recognize the right of a mortgagee under a union or standard mortgage clause to sue an insurer for breach of contract in the event of the insurer's failure to pay.[2] In contrast, there seem to be relatively few cases, and none in Mississippi, considering whether a mortgagor would have standing to sue for the insurer's nonpayment of his or her mortgage under a mortgage clause. However, several courts, and a leading insurance commentator, have

---

[2] For example, in Talman Federal Sav. & Loan Ass'n v. American States Ins. Co., 468 So. 2d 868, 874 (Miss. 1985), the sole case cited by plaintiff, the insurer determined that the insured had committed arson, and yet notwithstanding its obligation to pay the mortgagee on its claim for the loss of the property, the insurer refused payment. The mortgagee was put in the position of pursuing foreclosure of the property, which also entailed its having to go to the bankruptcy court to get the automatic stay since the debtor had filed for bankruptcy protection. The mortgagor and mortgagee both sued the insurer. However, the court's opinion dealt entirely with *the mortgagee's rights*. The court concluded that the insurer had breached its *independent contractual duty to the mortgagee* by failing to pay the mortgagee's claim, and held that the mortgagee was entitled to recover, in addition to policy benefits, a reasonable attorney's fee incurred by the mortgagee in protecting its security. Id. There was no discussion of the mortgagor's rights, or whether the mortgagor had standing to complain of the nonpayment to the mortgagee.

10

observed that "[t]he standard mortgage clause in a fire insurance policy creates a separate contract between the insurer and the mortgagee *in which the owner has no interest*." In re Alexander, 329 B.R. 919, 923 (Bkrtcy. M.D. Ga. 2005) (quoting Murphy v. Aetna Ins. Co., 96 A.D.2d 99, 101, 468 N.Y.S.2d 265, 267 (4th Dept. 1983)); 4 Couch on Insurance § 65:36 (3d) (2004) (same). Plaintiff has cited no authority to the contrary.  In the court's view, at the point Nationwide concluded plaintiff had no right to benefits under the policy based on its determination that she had committed arson, its duty to pay then ran solely to Union Planters.  Thus, the conclusion that Nationwide had a legitimate or arguable basis for concluding that plaintiff had committed arson forecloses any claim by plaintiff for punitive or extracontractual damages based on Nationwide's ensuing alleged failure to timely and fully pay the mortgagee.  Summary judgment will therefore be granted on this claim.[3]

---

[3]   Plaintiff has moved under Rule 56(f) for a stay of defendant's motion so that she may conduct discovery into the circumstances relating to Nationwide's delay in paying Union Planters.  In light of the court's conclusion, such discovery is unnecessary.

11

Based on the foregoing, it is ordered that defendant's motion for summary judgment on plaintiff's claim for punitive and extracontractual damages is granted.[4]

SO ORDERED this 9th day of November, 2007.


            /s/ Tom S. Lee
            UNITED STATES DISTRICT JUDGE

---

[4] Nationwide has suggested in its memoranda that plaintiff has not sought in this action to recover policy benefits but rather has made only a claim in this case for punitive and extracontractual damages. According to Nationwide, the coverage/arson issue is pending in its declaratory judgment action that is pending in state court. However, plaintiff's complaint herein specifically seeks policy benefits.